**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WHITE ARNOLD & DOWD P.C.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:15-cv-00837-RDP** |
| | } | |
| **DEPARTMENT OF JUSTICE, OFFICE** | } | |
| **OF PROFESSIONAL RESPONSIBILITY,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION**

This case is before the court on (1) Defendant's Motion for Summary Judgment (Doc. # 18); (2) Plaintiff's Motion for Vaughn Index, or Alternatively, In Camera Inspection (Doc. # 20); and (3) Plaintiff's Opposition to Motion for Summary Judgment and Cross-Motion For Summary Judgment (Doc. # 22). These Motions have been fully briefed. (Docs. # 21, 25, 26, 37 and 38).[1]

## I.     Background

This case concerns a Freedom of Information Act ("FOIA") request that Plaintiff White Arnold & Dowd, P.C. submitted to the Department of Justice's Office of Professional Responsibility ("OPR") on behalf of Michael G. Hubbard. (Doc. # 1). Mr. Hubbard is the former Speaker of the Alabama House of Representatives. On October 20, 2014, following an investigation conducted by Matt Hart of the Alabama Attorney General's office's white collar crime division and special prosecutor Van Davis, Hubbard was indicted on 23 counts relating to

---

[1] Plaintiff also filed an Objection to and Motion to Strike the Affidavit of Ginae Barnett (Doc. # 19). The court finds the Barnett Declaration sufficient and denies that Motion. *See Miccosukee Tribe of Indians of Florida v. U.S. Dep't of Justice*, 103 F. Supp. 3d 1314, 1327 (S.D. Fla. 2015) (district court determined that a comparable declaration was sufficient to justify OPR's *Glomar* response).

misusing his office for personal gain and soliciting gifts from lobbyists.[2] In June 2016, Hubbard was convicted on 12 of the 23 felony ethics charges, including charges of improperly soliciting benefits from lobbyists and voting in favor of a measure that helped a company for which he consulted. Prosecutors, including Hart, asserted that Hubbard had abused the power of his office.[3]

On January 8, 2015, Plaintiff made the FOIA request at issue in this case. (Doc. # 18-1 at 9). In that request, Plaintiff sought disclosure of "any records concerning any personal, personnel, or professional complaints made against Matt Hart, who worked as an Assistant United States Attorney ("AUSA") before joining the Alabama Attorney General's office." (Doc. # 18-1 at 9; Doc. # 37-1 at 2).

On January 9, 2015, in response to Plaintiff's FOIA request, OPR issued what is known as a *Glomar* response[4] under FOIA Exemptions 6 and 7(C), neither confirming nor denying the existence of responsive records. (Doc. # 18-1 at 2-3, 13; Doc. # 37-1 at 2). Agencies commonly issue a *Glomar* response when "to confirm or deny the existence of records . . . would cause harm cognizable under a FOIA exemption." *See Office of the Capital Collateral Counsel ex rel. Mordenti v. DOJ*, 331 F.3d 799, 801-02 n.3 (11th Cir. 2003).

---

[2] Cason, Mike, *Alabama House Speaker Mike Hubbard indicted on 23 felony corruption charges by Lee County Grand Jury* (October 20, 2014) http://www.al.com/news/index.ssf/2014/10/mike_hubbard_indicted.html (last visited May 31, 2017); Lyman, Bryan, *Alabama House Speaker Mike Hubbard arrested*, Montgomery Advertiser, (October 20, 2014) (last visited May 31, 2017).

[3] Blinder, Alan, *Michael Hubbard, Alabama House Speaker, Is Convicted on 12 Felony Ethics Charges*, New York Times (June 10, 2016) https://www.nytimes.com/2016/06/11/us/michael-hubbard-alabama-house-speaker-is-convicted-of-12-felony-ethics-charges.html?_r=0 (last visited May 31, 2017).

[4] *Glomar* responses are "named for the Hughes Glomar Explorer, a ship used in a classified Central Intelligence Agency project 'to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts.'" *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1171 (D.C. Cir. 2011) (quoting *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981)).

On March 16, 2015, the Department of Justice's Office of Information Policy ("OIP") received a letter from Plaintiff appealing the response the January 8, 2015 FOIA request. (Doc. # 12 at ¶ 10; Doc. # 1-1 at 5-11). OIP had not rendered a decision on Plaintiff's appeal regarding its FOIA Request at the time Plaintiff filed its Complaint in this action. (Doc. # 12 at ¶ 11).

## II.     Relevant Undisputed Facts[5]

In its January 8, 2015 FOIA Request to OPR, Plaintiff made the following request:

**Documents Requested**

Speaker Hubbard seeks records of the Department of Justice concerning the personal files of Assistant Attorney General Miles Matthew Hart ("Mr. Hart"). Mr. Hart has served as an Assistant Attorney General in the U.S. Attorney's Office for the Northern District of Alabama under U.S. Attorneys Alice Martin and Joyce White Vance.  Mr. Hart is presently employed by the Attorney General for the State of Alabama.

Specifically, Speaker Hubbard seeks all information concerning any personal, personnel or professional complaint against Mr. Hart in the possession or control of the U.S. Attorney's Office for the Northern District of Alabama or the U.S. Department of Justice.

(Doc. # 18-1 at 9; Doc. # 37-1 at 2).[6]

In response to Plaintiff's FOIA request, OPR refused to confirm or deny the existence of any responsive records. (Doc. # 18-1 ¶ 5; Doc. # 18-1 at 13-14; Doc. # 37-1 at 2). OPR explained that "[l]acking an individual's consent, an official acknowledgment of an investigation, or an overriding public interest, even to acknowledge the existence of investigatory records pertaining

---

[5]  The court notes that Plaintiff sought to supplement the record after the summary judgment motions were fully briefed. The court allowed Plaintiff's supplemental evidence. Plaintiff filed voluminous supplemental documents. (Docs. # 31 and 34). Although the court has reviewed the documents, a district court need not "parse a summary judgment record to search out facts or evidence not brought to the court's attention." *Atlanta Gas Light Co. v. UGI Utilities, Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006).

[6]  Paragraph 21 of Plaintiff's statement of facts in its Opposition to Motion for Summary Judgment and Cross-Motion for Summary Judgment characterizes the FOIA request in a manner that bears virtually no resemblance to the actual January 8, 2015 FOIA request. The description of the request does not accurately reflect the request actually made (which is contained in the Rule 56 file). (Compare Doc. # 22 at 6 *with* Doc. # 18-1). Plaintiff has not provided any record citation in support of a FOIA request in the nature of that set forth in its Opposition (*See* Doc. # 22 at 7), and the court has only been able to locate the January 8, 2015 FOIA Request quoted by the court above in the court's record. (Doc. # 18-1).

to an individual would constitute a clearly unwarranted invasion of personal privacy pursuant to 5 U.S.C. § 552(b)(6) and could reasonably be expected to constitute an unwarranted invasion of personal privacy pursuant to 5 U.S.C. § 552(b)(7)(C)." (Doc. # 18-1 at 13-14; Doc. # 37-1 at 2).

At the time of the request, Hart was a former Assistant United States Attorney for the Northern District of Alabama. (Doc. # 18-1 ¶ 9). Hart had been a non-supervisory line attorney. (Doc. # 37-1 at 3). And, at the time OPR issued its *Glomar* response, OPR had not received consent from Hart to disclose any responsive records, nor had DOJ officially acknowledged any investigation of Hart. (Doc. # 37-1 at 2). Similarly there is no Rule 56 evidence that Hart has at any time consented to OPR's release of any records regarding his tenure as an AUSA. (Doc. # 37-1 at 3).

If OPR possesses any records responsive to Plaintiff's FOIA request, they would exist in OPR's system of records that is compiled for law enforcement purposes. (Doc. # 18-1 ¶ 14) ("The records contained in OPR's system of records have been compiled as part of OPR's investigations of current and former DOJ employees who are alleged to have committed specific acts of professional misconduct which, if proved, could result in civil or criminal penalties."). OPR does not conduct an investigation into every complaint (or even most complaints) it receives from members of the public. (Doc. # 37-1 at 3).

In the context of Plaintiff's request, OPR considered the fact that an AUSA may have been the subject of DOJ investigation to be "likely to engender speculation, could stigmatize him or her, and could subject him or her to harassment or criticism." (Doc. # 37-1 at 3). Therefore, OPR considered Hart to have a substantial privacy interest in not having OPR officially or publicly disclose whether he has been the subject of a complaint, and OPR investigation, or disciplinary action. (Doc. # 37-1 at 3). Further, because Hart was a non-supervisory AUSA, OPR

determined that any documents (if they existed) would not shed light on operations of DOJ and OPR.

Plaintiff argues that OPR has disclosed documents related to the investigation of AUSAs before, and has submitted documents relating to an investigation of AUSAs Salvador Perricone and Jan Mann in support of that argument. However, both Perricone and Mann were higher level employees than a non-supervisory AUSA. Perricone was a Senior Litigation Counsel and the USAO's training officer attorney. He was considered part of USAO's senior management team. (Doc. # 37-1 at 4). Mann was the First Assistant U.S. Attorney and Chief of the USAO's Criminal Division. (Doc. # 37-1 at 4). Moreover, Perricone and Mann have each publicly acknowledged that their conduct was under investigation. (Doc. # 37-1 at 4-5). A court order granting a motion for new trial which addressed their conduct was extensively covered in the nationwide media, and DOJ had officially acknowledged OPR's investigation of them. (*Id.*). Therefore, OPR concluded Perricone and Mann had "severely diminished privacy interests." (Doc. # 37-1 at 5).

Plaintiff also argues that OPR has disclosed an investigation into an AUSA relating to the prosecution of former Senator Ted Stevens. In support of this argument, Plaintiff has submitted a redacted version of an OPR report of an investigation which was released to the Chairman of the Senate Committee on the Judiciary. (Doc. # 37-1 at 7). However, Plaintiff has presented no evidence that DOJ authorized the Senate Judiciary Committee to publicly disclose the report. (Doc. # 37-1 at 7). And, while OPR has officially acknowledged the investigation into that matter, it had not, as of the date of Ginae Barnett's Second Declaration, disclosed the report in response to any FOIA request. (Doc. # 37-1 at 7).

**III.    Standard of Review**

**A.    Summary Judgment**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).    The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact.    *Celotex*, 477 U.S. at 323.    Once the moving party has met its burden, the Rule requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial.    *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).    All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.    *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).    A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.    If the evidence is merely colorable, or is not significantly probative, summary judgment may be grated.    *See id.*, at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).    As *Anderson v.*

*Liberty Lobby, Inc.* teaches, Rule 56(c) "does not allow the plaintiff to simply rest on [her] allegations made in the complaint; instead, as the party bearing the burden of proof of trial, [s]he must come forward with at least some evidence to support each element essential to [her] case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by a plaintiff are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co*., 243 F. Supp.2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

### B.     FOIA

It is axiomatic that FOIA "provides for wide-ranging citizen access to government documents and presumes them subject to disclosure." *Ely v. Fed. Bureau of Investigation*, 781 F.2d 1487, 1489 (11th Cir. 1986) (citations omitted). "The purpose of FOIA 'is to encourage public disclosure of information so citizens may understand what their government is doing.'" *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1244 (11th Cir. 2008) (quoting *Office of Capital Collateral Counsel, Northern Region of Fla. v. United States Department of Justice*, 331 F.3d 799, 802 (11th Cir. 2003)). Nonetheless, "'Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information,' ... and provided for certain exceptions to the rule of broad disclosure." *News–Press v. United States Department of Homeland Security*, 489 F.3d 1173, 1191 (11th Cir. 2007) (quoting *Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982)).

FOIA contains nine exemptions set forth at 5 U.S.C. § 552(b), and each reflects the necessary balance between the public's interest in governmental transparency and "legitimate governmental and private interests that could be harmed by release of certain types of information." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010). Where a dispute arises as to the applicability of an exemption, "FOIA places on the courts the obligation to consider and resolve competing claims of privilege and access." *Ely*, 781 F.2d at 1490. So, a requester contending an agency wrongly withheld records may petition the court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). The applicable burden of proof in these cases reflects the principle that FOIA favors disclosure of government records. The court reviews *de novo* an agency decision to withhold its records, and the Government bears the burden of justifying any disputed exemption. *Id.; see also Miccosukee Tribe of Indians of Fla.*, 516 F.3d at 1258.

"Generally, FOIA cases should be handled on motions for summary judgment." *Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 369 (11th Cir. 1993). In assessing the evidence, the court must determine whether the agency had an "adequate factual basis" for invoking the exemption. *Miccosukee Tribe of Indians of Fla.*, 516 F.3d at 1258. "[I]n this Circuit, an adequate factual basis may be established, depending on the circumstances of the case, through affidavits, a *Vaughn* Index[7], *in camera* review, or through a combination of these methods." *Id*. Affidavits alone may be sufficient "so long as they provide an adequate factual basis for the district court to render a decision." *Id*. (citation omitted).

---

[7] A *Vaughn* index lists the documents the agency is withholding along with a detailed justification for the agency's claim. *See Stephenson v. Internal Revenue Serv.,* 629 F.2d 1140, 1145 (5th Cir.1 980) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), *on appeal from remand*, 523 F.2d 1136 (D.C. Cir. 1975)).

Typically an agency identifies, however generally, the documents for which it asserts an exemption. *Mordenti*, 331 F.3d at 801 n. 3 (citing *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009 (D.C. Cir. 1976)). Nevertheless, courts recognize an exception to this rule, known as the *Glomar* response, by which an agency "neither confirms nor denies the existence of the documents sought in the FOIA request." *Id.* (citing *Phillippi*, 546 F.2d 1009). "A *Glomar* response, however, is permitted only when confirming or denying the existence of records would itself cause harm cognizable under an FOIA exception." *Citizens for Responsibility & Ethics in Washington ("CREW") v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 (D.C. Cir. 2014) (internal quotation marks and citations omitted). To prevail, the Government must "justify the *Glomar* response based on general exemption review standards established in non-*Glomar* cases." *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012) (internal quotation marks and citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

Because even a *Vaughn* index or *in camera* review could undermine the purpose of a *Glomar* response by suggesting the existence (or not) of requested records, the D.C. Circuit has explicitly endorsed reliance on agency affidavits at summary judgment: "[i]n Glomar cases, courts may grant summary judgment on the basis of agency affidavits that contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Id.* (internal quotation marks and citation omitted). The Eleventh Circuit has also suggested reliance on affidavits alone may be proper in the *Glomar* context. *Ely*, 781 F.2d at 1493–94.

In its Motion, Defendant asks the court to affirm its *Glomar* response. (Doc. # 18). In its cross motion for summary judgment, Plaintiff asks the court to order disclosure of the requested documents, or at least the creation of a *Vaughn* Index. (Doc. # 22).

In this case, OPR based its *Glomar* response to Plaintiff's FOIA request on FOIA Exemptions 6 and 7(C). Under FOIA Exemption 6, an agency is not required to disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Similarly, Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). OPR must satisfy a two-part test to establish the propriety of the claimed exemptions. First, it must establish that its claim of right to withhold "comes within the ambit of one of the statutory exemptions." *Ely*, 781 F.2d at 1490 n.3 (11th Cir.1986). Second, and only after the initial showing is made, OPR must show that the relevant exemption's balancing analysis favors upholding the agency's *Glomar* response. *Id*.

### C.    Public Domain FOIA Exception

Before conducting the analyses under Exemptions 6 and 7(C), the court addresses Plaintiff's assertion that the public domain exception to FOIA applies. Plaintiff argues that OPR's *Glomar* response was improper because the existence of the records it is seeking has already been publicly disclosed.

> "Under FOIA's 'public domain' exception, an agency may not rely on an otherwise valid [FOIA] exemption to justify withholding information that is already in the public domain." *Marino v. Drug Enforcement Admin*., 685 F.3d 1076, 1080 (D.C. Cir. 2012) (internal quotation marks and citations omitted; alteration in original). "Yet in the context of a *Glomar* response, the public domain exception is triggered when the prior disclosure establishes the existence

(or not) of records responsive to the FOIA request, regardless whether the *contents* of the records have been disclosed." *Id.* at 1081 (internal quotation marks and citation omitted; emphasis in original). Thus, if the existence (or not) of records has already been publicly disclosed, an agency may not issue a *Glomar* response as to those records. The contents of the records, however, may still be subject to an exemption. Further, while the Government bears the burden of justifying any exemptions, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis v. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir.1992) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)).

*Miccosukee Tribe of Indians of Florida v. U.S. Dep't of Justice*, 103 F. Supp. 3d 1314, 1327 (S.D. Fla. 2015).[8]

Here, the public domain question turns on the precise language of the FOIA request. Plaintiff's FOIA request asked for, "all information concerning any personal, personnel or professional *complaint* against Mr. Hart in the possession or control of the U.S. Attorney's Office for the Northern District of Alabama or the U.S. Department of Justice." (Doc. # 18-1 at 9; Doc. # 37-1 at 2) (emphasis added).

Plaintiff argues at length that allegations of prosecutorial misconduct against Hart, made both in Hubbard's criminal trial and in previous criminal trials, renders any issue relating to alleged prosecutorial misconduct against Hart "in the public domain." But those arguments stray from the information sought in Plaintiff's actual FOIA request. That is, the actual request seeks information relating to *complaints* made against Hart in the possession of OPR. The court finds that the Rule 56 evidence does not establish that the existence or non-existence of any document concerning any such *complaints* has been publicly disclosed.

---

[8] Plaintiff also cites *In re Special Proceedings*, 842 F. Supp. 2d 232 (D.D.C. 2012), in support of its argument that Defendant's *Glomar* response was improper and that the alleged documents should be made public under its FOIA request. (Doc. # 34 at 3). However, that case has no application here. *In re Special Proceedings* addressed whether a report of a court-appointed investigator regarding criminal contempt proceedings against six Department of Justice attorneys should be permanently sealed. 842 F. Supp. 2d at 234. The issue in that case was the First Amendment right of access to judicial proceedings. 842 F. Supp. 2d at 238. Nowhere in that case is FOIA or any its exemptions even mentioned.

As evidence in support of their argument that Hart waived any right to privacy and that information regarding complaints is in the public domain, Plaintiff asserts as follows:

> Mr. Hart waived any right of privacy as to his OPR complaints when he (1) called radio host Dale Jackson and told Mr. Jackson that with regard to the Taylor case (also known as the "two-year college" case), he "got OPR complaints out of that... got accusations of grand jury abuse and all other kinds of things. You know, DOJ assigned somebody to defend me, and I did it and got a Bar complaint or complaints, you know, those kinds of things" and (2) publicly filed a transcript of that conversation as an attachment to the State's Surreply to Defendant's Amended Motion for Production in the case of *State of Alabama v. Michael Gregory Hubbard*, Case No. CC-2014-000565, pending in the Circuit Court of Lee County, Alabama. See pages 14-15 of Exhibit H to State's Surreply to Defendant's Amended Motion for Production (Doc. 61) attached hereto as Exhibit 1.

(Doc. # 22 at 4). This argument might stand on solid ground *if* the materials cited by Plaintiff in support of this assertion actually established what Plaintiff claims. But they do not. The document Plaintiff has cited to establish that the alleged public conversation took place appears to be two pages from the middle of a brief. (Doc. # 22-1). But there is no case number or caption on the pages to establish what case it is, what court it is in, or that such a conversation actually occurred. The pages reference a "*requested* conversation," but the purported transcript of the conversation is not attached. (Doc. # 22-1) (emphasis added). Nor do the attached pages *in any way* establish that Hart made a call to a radio show or that the call was recorded. All the two typed pages establish (if they are even true and correct copies of pages from a motion filed in state court – a conclusion which cannot be gleaned from the document itself) is that Hubbard requested disclosure of an unspecified media conversation in support of his allegation of prosecutorial misconduct. (Doc. # 22-1).

Plaintiff also cites to the Affidavit of Henry "Sonny" Reagan as establishing that Hart's "conduct" was made public. (Doc. # 22 at 7). But again, the issue is not whether *allegations* of misconduct by Hart have been made public. They have. The question is whether the existence or non-existence of documents regarding complaints to DOJ or OPR against Hart has been made

public. The Reagan Affidavit simply does not make that showing. At most, it establishes that Hart had private conversations with a co-worker in which he discussed complaints that had been made against him while he was an AUSA. (Doc. # 34-1 at 2-3). A conversation with a co-worker is not a "public disclosure" regarding the existence or non-existence of records regarding a complaint. *See Miccosukee Tribe of Indians of Florida*, 103 F. Supp. 3d at 1328. Reagan apparently testified in the *Hubbard* case about alleged misconduct by Hart while working for the Alabama Attorney General's office. (Doc. # 22 at 7). But this evidence has no relation to complaints against Hart while he was employed by the U.S. Attorney's office.

Plaintiff also argues that a Report and Recommendation issued by Magistrate Judge Ott on a Motion to Dismiss an indictment filed by Roger W. Taylor is evidence that information regarding Hart's misconduct is in the public domain. (*See, e.g.,* Doc. # 22 at 4). In November 2009, in the criminal case of *United States v. Roger W. Taylor*, United States District Court for the Northern District of Alabama Case No. 7:09-cr-00048-SLB-JEO, Taylor moved to dismiss the indictment against him on grounds of alleged prosecutorial misconduct and abuse of the grand jury process and witnesses. (Case No. 7:09-cr-00048-SLB-JEO, Doc. # 199 at 1). In that case, Taylor was represented by three of the attorneys from White, Arnold and Dowd, the same firm which represents Hubbard here and the same firm which made the relevant FOIA request on his behalf. (*See* Case No. 7:09-cr-00048-SLB-JEO, Doc. # 64). In the *Taylor* Report and Recommendation, Judge Ott specifically limited his analysis to the issue of whether there was any prejudice to Taylor; he did not directly address whether any *conduct* was improper. (Case No. 7:09-cr-00048-SLB-JEO, Doc. # 199 at 10, n.11). Judge Ott's Report and Recommendation in the *Taylor* case found that certain "remarks" made by Hart in connection with proceedings in that case may have been "needless and improper." (Case No. 7:09-cr-00048-SLB-JEO, Doc. #

64). But Judge Ott also found that those remarks were not so prejudicial as to require dismissal of the Taylor Indictment. (Case No. 7:09-cr-00048-SLB-JEO, Doc. # 199 at 26, 41-2). Judge Ott described Hart's conduct before the grand jury *in that case* as "not the paragon of grand jury decorum" but still "insufficient [for a finding] that it 'substantially influenced the grand jury's decision.'" (Case No. 7:09-cr-00048-SLB-JEO, Doc. # 199 at 63). Judge Ott further found that "the allegations against Mr. Hart *in [the Taylor] case* do not reach a level entitling the defendant to any relief." (Case No. 7:09-cr-00048-SLB-JEO, Doc. # 199 at 64) (emphasis added).

Plaintiff argues that, based on Judge Ott's Report and Recommendation, "the conduct at issue is already the subject of a publicly available decision." (*Id*.). Again, in making this argument, Plaintiff misses the mark. The point is not whether any allegations of improper conduct against Hart have been made publicly. They have (and frequently by Plaintiff). Rather, the key is whether information regarding the existence or non-existence of complaints to the DOJ or OPR regarding Hart has been acknowledged publicly. Nothing found in Judge Ott's decision supports a finding that the existence or non-existence of complaints against Hart to the DOJ or the OPR is public knowledge.

The public domain exception is sometimes known as the official-acknowledgment doctrine. The official-acknowledgment doctrine is a type of waiver doctrine. It provides that "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information." *ACLU v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013). But the hurdles that must be cleared to invoke the doctrine are high. A FOIA requester must show that the information requested (1) is "as specific as the information previously released," (2) "match[es]" the information previously disclosed," and (3) was "already ... made public *through an official and*

*documented disclosure.*" *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citation and internal quotation marks omitted, emphasis added). "Prior disclosure of similar information does not suffice; instead, the specific information sought by the plaintiff must already be in the public domain *by official disclosure.*" *Wolf*, 473 F.3d at 378 (emphasis added); *see also ACLU*, 710 F.3d at 427. "This waiver is limited only to official and public disclosures *made by the same agency providing the Glomar response.*" *Florez v. CIA*, 829 F.3d 178, 186 (2d Cir. 2016) (emphasis added) (refusing to impute the FBI's decision to disclose information to the CIA); *see also Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) (refusing to "treat the statements of the [Office of Personnel Management] ... as tantamount to an official statement of the CIA").

Plaintiff's evidence and arguments that information regarding Hart's alleged misconduct is in the public domain falls short of satisfying the public domain exception/official-acknowledgment doctrine. Plaintiff has not presented the court with any evidence that OPM has officially and publicly disclosed the existence or non-existence of complaints about Hart. Therefore, the court will address OPM's claimed exemptions.

### D. Exemption 6

In its *Glomar* response, OPR invoked FOIA Exemption 6, which covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). An agency may withhold personal information in agency records pursuant to Exemption 6 if "(1) the information was within personnel, medical, or similar files; and (2) a balancing of individual privacy interests against the public interest in disclosure reveals that disclosure of the information would constitute a clearly unwarranted invasion of personal privacy." *News Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1196–97 (11th Cir. 2007) (internal quotation marks and citation omitted). Under the first

prong, "similar files" is interpreted broadly to include "any 'detailed Government records on an individual which can be identified as applying to that individual.'" *Id.* at 1197 (*quoting U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). "[A]n agency's investigative reports constitute 'similar files' for purposes of Exemption 6." *Corbett v. Transp. Sec. Admin.*, 568 Fed.App'x. 690, 703 (11th Cir. 2014) (alteration added; citations omitted); *see also Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 89 (D.C. Cir. 1984); *see also Mordenti*, 331 F.3d at 803-04 (Eleventh Circuit held the DOJ could withhold under Exemption 6 certain records relating to internal disciplinary proceedings against a former AUSA). Here, the undisputed Rule 56 evidence establishes that the information requested by Plaintiff, if it exists, would be contained within personnel, medical, or similar files.

Plaintiff argues that Hart has no ascertainable privacy interest in the requested documents. (Doc. # 26 at 4). But that argument cuts no ice. In *Mordenti,* the Eleventh Circuit concluded that a former AUSA, who was subject to the FOIA request, retained her privacy interest despite the fact there was "already substantial information available to the public about [her] misconduct and her subsequent sanctions." 331 F.3d at 804 (alteration added). Here, there is some public information regarding alleged misconduct by Hart. However, as in *Mordenti,* this court concludes that Hart has retained a significant privacy interest.

Plaintiff next asserts that there is a public interest in misconduct by Hart and his "qualifications to serve in his current capacity." (Doc. # 22 at 16). That argument also lacks merit. First, these are not the kind of public interests for which Congress enacted FOIA. "FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 774 (1989) (emphasis in original). Second, "there is no public interest in [Hubbard's] obtaining

records for his private litigation." *Miccosukee Tribe of Indians of Florida*, 103 F. Supp. 3d at 1334 (citing *Horowitz v. Peace Corps*, 428 F.3d 271, 278–79 (D.C. Cir. 2005) (Plaintiff's need to obtain the information for his own litigation is irrelevant).

Without question, the documents requested in Plaintiff's FOIA request fall squarely within Exemption 6. The balance of Hart's substantial private interests and the negligible public interest in alleged misconduct by one line-level AUSA weighs substantially in favor of the OPR's *Glomar* response. The court finds that disclosure of the existence or non-existence of responsive records would constitute an unwarranted invasion of Hart's personal privacy. Therefore, Exemption 6 applies here.

### E.        Exemption 7(C)

In response to Plaintiff's FOIA request, OPR has also invoked Exemption 7(C) which covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Ginae Barnett's Declaration, submitted by OPR to explain its *Glomar* response to Plaintiff's FOIA request, states that, "if OPR possesses responsive records, they exist in OPR's system of records that is compiled for law enforcement purposes." (Doc. # 18-1 ¶ 14). Barnett's Declaration further explains that "[t]he records contained in OPR's system of records have been compiled as part of OPR's investigations of current and former DOJ employees who are alleged to have committed specific acts of professional misconduct which, if proved, could result in civil or criminal penalties." (Doc. # 18-1 ¶ 14).

Exemption 7(C) "does not exempt from disclosure … [i]nternal agency investigations ... in which an agency, acting as the employer, simply supervises its own employees." *Kimberlin v.*

*Dep't of Justice,* 139 F.3d 944, 947 (D.C. Cir. 1998) (quoting *Stern*, 737 F.2d at 89). However, an agency's investigation of its own employees will be found to be for law enforcement purposes "if it focuses 'directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions.'" *Kimberlin,* 139 F.3d at 947 (quoting *Stern*, 737 F.2d at 89, in turn quoting *Rural Housing Alliance v. U.S. Dept. of Agriculture*, 498 F.2d 73, 81 (D.C. Cir. 1974)).

Plaintiff asserts that the documents it requested "relate[] to complaints that … Hart, engaged in improper prosecutorial conduct during the course of the grand jury proceedings." (Doc. # 22 at 6). Plaintiff admits that it "requested information that goes to Mr. Hart's compliance with regulations, rules of conduct and the law." (Doc. # 22 at 14). Therefore, documents regarding an investigation of complaints of this nature, if any existed, would have been compiled for law enforcement purposes.  Such documents therefore fall squarely within the ambit of Exemption 7(C). Thus, the court must again weigh the private and public interests implicated by Plaintiff's request. *See Ely*, 781 F.2d at 1490 n. 3; *Miccosukee Tribe of Indians of Florida*, 103 F. Supp.3d  at 1329.

"[T]he mention of a person's name in the context of a law enforcement investigation will engender comment and speculation and carries a stigmatizing connotation." *Nadler v. U.S. Dep't of Justice*, 955 F.2d 1489, 1487 (11th Cir. 1992) (citation omitted). While there is some question about a government official's privacy interest in personal information contained in law enforcement records is lessened when compared to the privacy interest of a private citizen, it is nevertheless considerably substantial. *Compare Ray v. U.S. Dep't of Justice, I.N.S.*, 778 F.Supp. 1212, 1215 (S.D.Fla.1991) ("[The officer]'s status as a federal employee does not diminish his privacy interest." (citation omitted)) *with Kimberlin*, 139 F.3d at 949 (finding "the rank of the

public official involved" should be considered in determining the privacy interests at stake under Exemption 7(C)). However, even where the individual is a public employee, "[b]ecause of the potential for stigmatization, [E]xemption 7(C) takes particular note of the strong interest of individuals ... in not being associated unwarrantedly with alleged criminal activity." *Nadler*, 955 F.2d at 1489 (internal quotation marks and citation omitted). When an agency invokes Exemption 7(C), "a *Glomar* response may be issued in place of a statement acknowledging the existence of responsive records but withholding them, if confirming or denying the existence of the records would associate the individual named in the request with criminal activity." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv*., 71 F.3d 885, 893 (D.C. Cir. 1995).

Plaintiff's articulated public interests, which it argues justify disclosure of the requested documents, are "ensuring the integrity of our system and holding prosecutors accountable for their misconduct" and "Mr. Hart's qualifications to serve in his current capacity." (Doc. 22 at 7, 16). Plaintiff further asserts that "DOJ cannot deny the existence of a substantial public interest in the records sought." (Doc. # 22 at 16). But Defendant does dispute that there is a public interest in any responsive records. (Doc. # 25 at 19-21). Moreover, as Defendant correctly points out (Doc. # 25 at 19*)*, it is Plaintiff's burden to show that the requested records would serve a *significant* public interest. *See, e.g., Associated Press v. DOJ*, 549 F.3d 62, 66 (2d Cir. 2008).

The relevant public interest in FOIA cases is to "shed [] light on an agency's performance of its statutory duties" and thereby enable citizens to be informed about "what their government is up to." *Multi Ag Media v. Dep't of Agric*., 515 F.3d 1224, 1231 (D.C. Cir. 2008) (quoting *U.S. Dept. of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989)). There must be some "nexus between the requested information and the asserted public interest that

would be advanced by disclosure." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172–73 (2004).

When Hart worked for the DOJ, he was a non-supervisory line attorney. (Doc. # 37-1 at 3). The actions and misconduct of lower-level public officials, such as staff attorneys, reveal little about the government's operations. *See, e.g., Kimberlin*, 139 F.3d at 949 (privacy interests staff-level AUSA outweighed the public interest); *Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 180 (D.C. Cir. 2002) (AUSA's privacy interests outweighed the public interest in releasing the contents of the OPR investigation of the AUSA); *Bartko v. United States Dep't of Justice*, 128 F. Supp. 3d 62, 70 (D.D.C. 2015) (privacy interests of staff level AUSA outweighed public interest in releasing OPR record); *Am. Immigration Lawyers Ass'n v. Executive Office for Immigration Review*, 76 F.Supp.3d 184, 192–93 (D.D.C. 2014) (immigration judges maintain substantial privacy interests as they are "unionized, non-supervisory career civil servants selected through competitive vacancy announcements, as opposed to political appointees or senior managers"); *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1234–36 (10th Cir. 2007) (disclosure of names of "low-level employee[s] who committed serious acts of misconduct ... would shed little light on the operation of the government"). The court agrees that information regarding complaints about one non-supervisory AUSA does not say enough about "government operations" to outweigh Hart's significant privacy interests in that information. The other public interests argued by Plaintiff are not cognizable under Exemption 7(C).[9]

Plaintiff has failed to establish a cognizable public interest. And Hart has a significant privacy interest in the information requested. The OPR's *Glomar* response was proper under

_____

[9] Moreover, any interest Hubbard may have in the requested documents in relation to his prosecution is clearly not a *public* interest.

Exemption 7(C). Disclosure of responsive records could reasonably be expected to constitute an unwarranted invasion of Hart's personal privacy. Therefore, OPM has correctly invoked Exemption 7(C) here.

## IV.    Conclusion

Although FOIA favors the disclosure of government records for the good of the public, OPR has met its burden of showing that its refusal to confirm or deny the existence of the records Plaintiff is seeking was justified under FOIA Exemptions 6 and 7(C). Accordingly, Defendant's Motion for Summary Judgment (Doc. # 18) is due to be granted. Plaintiff's Motion for Vaughn Index, or Alternatively, In Camera Inspection (Doc. # 20) and Plaintiff's Cross-Motion For Summary Judgment (Doc. # 22) are due to be denied.

A separate order will be entered.

**DONE** and **ORDERED** this June 2, 2017.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE